**IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **STEPHANIE WRIGHT,** | : | |
| **Plaintiff** | : | **No. 1:21-cv-00183** |
| | : | |
| **v.** | : | **(Judge Kane)** |
| | : | |
| **COMMONWEALTH OF** | : | |
| **PENNSYLVANIA, DEPARTMENT OF** | : | |
| **REVENUE,** | : | |
| **Defendant** | : | |

## MEMORANDUM

In the above-captioned action, Plaintiff Stephanie Wright ("Plaintiff") asserts claims of

hostile work environment sexual harassment, sexual discrimination, and retaliation against

Defendant Commonwealth of Pennsylvania, Department of Revenue ("Defendant" or "The

Department") under Title VII of the 1964 Civil Rights Act, 42 U.S.C. § 2000e ("Title VII"), and

the Pennsylvania Human Relations Act ("PHRA"), 43 P.S. § 951 et seq.   (Doc. Nos. 1, 8.)

Before the Court is Defendant's motion for summary judgment.   (Doc. No. 25.)   For the

reasons that follow, the Court will grant Defendant's motion.

## I.    BACKGROUND[1]

The Department hired Plaintiff as a Tax Accountant Collection Technician on July 6,

2015.   (Doc. No. 26 ¶ 1.)[2]   Robert Scott Pfeffer ("Pfeffer") was the division chief of the office

in which Plaintiff worked.   (Id. ¶ 2.)[3]  Plaintiff claims that she and Pfeffer had a meeting in his

office in July 2015.   (Id. ¶ 3.)   During that meeting, Plaintiff claims that Pfeffer told her he

would help her with her low self-esteem and low self-confidence, and called her an "abused

puppy."   (Id. ¶ 4.)[4]    Pfeffer did not call Plaintiff any phrases or names at any other time during

---

[1]  The following relevant facts of record are taken from Defendant's Statement of Material Facts
In Support of Its Motion for Summary Judgment (Doc. No. 26), and Plaintiff's Response to
Defendant's Statement of Material Facts (Doc. No. 29), and are undisputed unless otherwise
noted.   The parties' statements of material facts contain specific citations to the record at each
numbered paragraph.   (Doc. Nos. 26, 29.)   This record does not include the "additional facts"
filed by Plaintiff to supplement her counter-statement of material facts.   See (Doc. No. 29 at 7-
10).   Indeed, under Local Rule 56.1, a party opposing a motion for summary judgment may only
file a statement of facts "responding to the numbered paragraphs set forth" in the moving party's
statement of facts.   It does not, however, "permit a non-moving party to file an additional
statement of material facts that does not respond to the movant's statement."   See Romero v.
Tobyhanna Twp., No. 3:19-cv-01038, 2021 WL 4037837, at *2 (M.D. Pa. Sept. 3, 2021)
(collecting cases).   Therefore, the Court will disregard Plaintiff's "additional facts" in
connection with its consideration of Defendant's motion and consider only Plaintiff's numbered
responses to Defendant's statement of facts, in accordance with Local Rule 56.1.

[2]  Plaintiff disputes this date, clarifying that she was "initially hired . . . in 2006 as a temp during
tax season before she eventually took on a permanent role, as a tax specialist working in the
Taxpayer Service and Information Center."   (Doc. No. 29 ¶ 1.)   Because Plaintiff does not call
into question the substance of Defendant's assertion, Defendant's statement of material fact is
deemed admitted under Local Rule 56.1.

[3]  Plaintiff disputes this assertion "as stated," explaining "Mr. Robert 'Scott' Pfeffer served as
Division Chief over Plaintiff's division in her role as TACT."   (Doc. No. 29 ¶ 2.)   Because
Plaintiff does not call into question the substance of Defendant's assertion, Defendant's
statement of material fact is deemed admitted under Local Rule 56.1.

[4]  Plaintiff disputes this assertion "as characterized," explaining "[d]uring this meeting, Mr.
Pfeffer told Plaintiff she had low self esteem and lacked-confidence, traits Plaintiff denied.
Plaintiff interpreted the manner in which Mr. Pfeffer offered to help with her alleged self-esteem,
including his demeanor during this meeting, as very suggestive.   During this meeting, Mr.
Pfeffer also called Plaintiff an 'abused puppy.'"   (Doc. No. 29 ¶ 4.)   Because Plaintiff does not
call into question the substance of Defendant's assertion, Defendant's statement of material fact

2

the course of her employment.   (Id. ¶ 5.)[5]

Plaintiff claims that during the July 2015 conversation, Pfeffer acted in a "sexually suggestive" manner.   (Id. ¶ 6.)   Plaintiff concluded that Pfeffer's actions during the meeting were "sexually suggestive" because of Pfeffer's "tone of voice," "facial expressions," and the fact that he "leaned in" during their conversation.   (Id. ¶ 7.)[6]   During this conversation, Pfeffer was seated behind his office desk and Plaintiff was seated on the opposite side of the desk in a visitor chair.   (Id. ¶ 8.)

On another unknown date, Plaintiff claims that Pfeffer came to her desk, when no others were present, and sarcastically and suggestively commented as to why Plaintiff's male co-workers were coming by her desk.   (Id. ¶ 9.)[7]   Plaintiff speculatively interpreted Pfeffer's

---

is deemed admitted under Local Rule 56.1.

[5]  Plaintiff disputes this assertion "as stated," explaining that, although "Pfeffer did not use any phrase other than 'abused puppy' after the meeting discussed above, he would speak about Plaintiff's self-esteem and belittle Plaintiff in front of other individuals."   (Doc. No. 29 ¶ 5.)

[6]  Plaintiff disputes this assertion "as stated," explaining "Plaintiff interpreted Mr. Pfeffer's actions as 'sexually suggestive' because of Pfeffer's 'tone of voice,' 'facial expressions,' and the fact that he 'leaned in' during their conversation.   Plaintiff observed Mr. Pfeffer's tone of voice and facial expressions and characterized them as 'flirtatious.'"   (Doc. No. 29 ¶ 7.)   Because Plaintiff does not call into question the substance of Defendant's assertion, Defendant's statement of material fact is deemed admitted under Local Rule 56.1.

[7]  Plaintiff disputes this assertion "as stated," explaining:

> Plaintiff recalled that at some point after her meeting with Mr. Pfeffer, where Mr. Pfeffer referred to Plaintiff as an abused puppy, Mr. Pfeffer came to Plaintiff's cubicle and made a comment about him wondering why all the guys are coming by Plaintiff's desk. Plaintiff interpreted Mr. Pfeffer's statement as insinuating [that] Plaintiff was having intimate relationships with these co-workers because of his demeanor and tone, which Plaintiff described as 'sarcastic.'

(Doc. No. 29 ¶ 9.)   Because Plaintiff does not call into question the substance of Defendant's assertion, Defendant's statement of material fact is deemed admitted under Local Rule 56.1.

comment to imply that she was flirtatiously bringing these men around her.   (Id. ¶ 10.)[8]

Pfeffer did not make any other comments of a sexually suggestive nature to Plaintiff.   (Id. ¶ 11.)

Another individual, on an unknown date, told Plaintiff that Pfeffer "[o]gled" her, although she

herself did not witness this behavior.   (Id. ¶ 12.)   Plaintiff claims that Pfeffer continued to

scrutinize and micromanage her work from her denial of his advances during the July 2015

meeting in his office until his transfer from the Division.   (Id. ¶ 13.)

On June 28, 2016, Plaintiff sent an email to union representative Ruth Feathers ("Ms.

Feathers") at 12:45 p.m., complaining that Pfeffer was harassing her and attached confidential

tax-payer information and W-2 forms.   (Id. ¶ 14.)   Plaintiff forwarded this information to the

Gmail electronic mail address of another Local Union, No. 2545, to which she did not belong, on

July 6, 2016, at 9:03 a.m.   (Id. ¶ 15.)[9]   Pfeffer was transferred out of his position and into a

research analyst position on or about September 12, 2016.   (Id. ¶ 16.)

Over one-year later, while working on a project unrelated to Plaintiff, the Labor Relations

Division, including Pfeffer and other Department staff, discovered Plaintiff's June 28, 2016

email to Ms. Feathers and Local Union No. 2545, containing the confidential tax-payer

information.   (Id. ¶ 17.)   Defendant asserts that, in accordance with Department policy,

---

[8]  Plaintiff disputes this assertion "as characterized," explaining "Plaintiff interpreted Mr.
Pfeffer's behavior as sexual harassment because, based on her experience, Mr. Pfeffer's tone,
demeanor, and statements, implied she was bringing flirtatious attention of men onto herself and
was placing her in a certain light which was not appropriate for workplace conversation."   (Doc.
No. 29 ¶ 10.)

[9]  Plaintiff disputes this assertion "as stated," explaining "Plaintiff forwarded this information to
the Gmail electronic mail address listed on the document which speaks for itself; the Gmail
address to which the email was forwarded was an email address Plaintiff claimed" her union
representative "gave to her to send the documents to."   (Doc. No. 29 ¶ 15.)   Because Plaintiff
does not call into question the substance of Defendant's assertion, Defendant's statement of
material fact is deemed admitted under Local Rule 56.1.

Department staff, including Pfeffer, reported this violation of the Department's Code of Conduct and Department's Tax Information Confidentiality Agreement to Human Resources on December 14, 2017.   (Id. ¶ 18.)   Plaintiff disputes this characterization.   She states that Pfeffer took it upon himself to ensure that this single instance of alleged confidentiality violation was reported to Tracy Sullivan ("Ms. Sullivan")—who works for The Department's Office of Employee Relations and Workforce Support—even though numerous other supervisory level employees stated that the appropriate action for Pfeffer to take was to delete the file, as it was over a year old and in connection with grievances about himself.   (Doc. Nos. 29 ¶ 18; 29-3 at 13.)

A pre-disciplinary conference was held regarding Plaintiff's conduct on December 15, 2017.   (Doc. No. 26 ¶ 19.)   During the pre-disciplinary conference, Plaintiff admitted to releasing confidential taxpayer information to Ms. Feathers and Local Union No. 2545, in violation of the Department's Tax Information Confidentiality Agreement.   (Id. ¶ 20.)[10]   The Department placed Plaintiff on suspension on December 15, 2017, due to an ongoing administrative investigation into her conduct of releasing confidential taxpayer information.   (Id. ¶ 21.)[11]   Plaintiff subsequently spoke to Jonathan Goss, her union representative, who advised her to submit a letter of resignation "or else it would be a termination on record."   (Id. ¶¶ 22-23.) Plaintiff submitted a letter of resignation on January 12, 2018.   (Id. ¶ 24.)

---

[10]   Plaintiff disputes this assertion "as stated," explaining that when she was asked at this meeting if her disclosure violated confidential information, she responded "hearing how you explain it, I see it now."   (Doc. No. 29 ¶ 20.)   Plaintiff also adds that she sent these emails because she thought they supported her claims of harassment.   (Id.)   Because Plaintiff does not call into question the substance of Defendant's assertion, Defendant's statement of material fact is deemed admitted under Local Rule 56.1.

[11]   Plaintiff does not dispute this assertion, but makes a conclusory legal argument to suggest that "the credibility of the agents as to the reason why Plaintiff was suspended requires a credibility determination, which should be left to the factfinder."   (Doc. No. 29 ¶ 21.)

On April 2, 2018, Plaintiff filed a charge of discrimination with the Pennsylvania Human Relations Commission ("PHRC") and the Equal Employment Opportunity Commission ("EEOC").   (Id. ¶ 25.)   Approximately three years later, on February 2, 2021, Plaintiff initiated the above-captioned action by filing a complaint in this Court, alleging violations under Title VII and the PHRA.   (Doc. No. 1.)   Defendant filed a partial motion to dismiss Plaintiff's claims on June 7, 2021.   (Doc. No. 6.)   After Plaintiff filed an amended complaint (Doc. No. 8), the Court denied Defendant's motion as moot (Doc. No. 9).

Plaintiff's amended complaint alleges four counts, two under Title VII, and two under the PHRA, encompassing six claims: Title VII hostile work environment sexual harassment, sexual discrimination (Count I), and retaliation (Count III); and PHRA hostile work environment sexual harassment, sexual discrimination (Count II), and retaliation (Count IV).   (Doc. No. 8.) Defendant filed an answer to Plaintiff's amended complaint with affirmative defenses on July 6, 2021.   (Doc. No. 10.)

Defendant filed the pending motion for summary judgment on June 21, 2022, along with a brief in support and statement of material facts.   (Doc. Nos. 25-27.)   Plaintiff filed a brief in opposition and counter-statement of material facts on July 12, 2022 (Doc. Nos. 28-29), and Defendant filed a reply brief in further support of its motion on July 26, 2022 (Doc. No. 30). Having been fully briefed, the motion is ripe for disposition.

## II.   LEGAL STANDARD

Rule 56(a) of the Federal Rules of Civil Procedure provides that summary judgment is warranted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."   See Fed. R. Civ. P. 56(a).   A factual dispute is material if it might affect the outcome of the suit under the applicable law, and it is genuine

only if there is a sufficient evidentiary basis that would allow a reasonable factfinder to return a verdict for the non-moving party.   See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248-49 (1986).   At summary judgment, the inquiry is whether the evidence presents a sufficient disagreement to require submission to the jury or whether it is so one-sided that one party must prevail as a matter of law.   See id. at 251-52.   In making this determination, the Court must "consider all evidence in the light most favorable to the party opposing the motion."   See A.W. v. Jersey City Pub. Schs., 486 F.3d 791, 794 (3d Cir. 2007).

The moving party has the initial burden of identifying evidence that it believes shows an absence of a genuine issue of material fact.   See Conoshenti v. Pub. Serv. Elec. & Gas Co., 364 F.3d 135, 145-46 (3d Cir. 2004).   Once the moving party has shown that there is an absence of evidence to support the non-moving party's claims, "the non-moving party must rebut the motion with facts in the record and cannot rest solely on assertions made in the pleadings, legal memoranda, or oral argument."   See Berckeley Inv. Grp. Ltd. v. Colkitt, 455 F.3d 195, 201 (3d Cir. 2006); accord Celotex Corp. v. Catrett, 477 U.S. 317, 324 (1986).   If the non-moving party "fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden at trial," summary judgment is warranted.   See Celotex, 477 U.S. at 322.   With respect to the sufficiency of the evidence that the non-moving party must provide, a court should grant a motion for summary judgment when the non-movant's evidence is merely colorable, conclusory, or speculative.   See Anderson, 477 U.S. at 249-50.   There must be more than a scintilla of evidence supporting the non-moving party and more than some metaphysical doubt as to the material facts.   See id. at 252; see also Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986).   Furthermore, a party may not defeat a motion for summary judgment with evidence that would not be

admissible at trial.   See Pamintuan v. Nanticoke Mem'l Hosp., 192 F.3d 378, 387 (3d Cir. 1999).

## III.   DISCUSSION

Defendant argues that it is entitled to summary judgment as to: (1) Plaintiff's Title VII hostile work environment sexual harassment and discrimination claims (Count I) because they are time-barred and fail on their merits, even if timely; (2) her Title VII and PHRA retaliation claims (Counts III & IV) because they fail on their merits; and (3) her PHRA claims (Counts II & IV) because they are barred by the Eleventh Amendment to the United States Constitution. (Doc. No. 27 at 5-14.)   The Court will first consider whether the Eleventh Amendment bars Plaintiff's PHRA claims before turning to whether Defendant is entitled to summary judgment as to her Title VII claims.

### A.   Whether the Eleventh Amendment Bars Plaintiff's PHRA Claims

Defendant argues that Plaintiff's PHRA claims (Counts II & IV) are barred under the Eleventh Amendment to the United States Constitution (id. at 14), which provides that "a plaintiff other than the United States or a state may not sue a state in federal court without the latter state's consent unless Congress abrogates the state's Eleventh Amendment immunity pursuant to a constitutional provision granting Congress that power."[12]   See Chittister v. Dept. of Cmty. & Econ. Dev., 226 F.3d 223, 226 (3d Cir. 2000); U.S. Const. am. XI.   Defendant also argues that the Court should dismiss Plaintiff's claims without providing her an opportunity to

---

[12]   The Court makes two clarifications.   First, the parties do not dispute that Defendant can be sued in a federal forum under Title VII.   Second, Defendant's reply brief contends that the Eleventh Amendment confers "immunity from liability."   (Doc. No. 30 at 12.)   The Eleventh Amendment, however, does not confer immunity from liability—it only confers immunity from suit.   See Lombardo v. Pa., Dep't of Pub. Welfare, 540 F.3d 190, 194-95 (3d Cir. 2008); In re Venoco, LLC, 610 B.R. 239, 246 (D. Del. 2020).

refile them in a state court because they are time-barred.   (Doc. No. 30 at 14-15.)

Plaintiff does not dispute that the Eleventh Amendment would ordinarily bar her from bringing state law claims against Defendant in a federal forum.   However, she argues that Defendant has waived its sovereign immunity because of its "affirmative litigation conduct" in this case: raising the Eleventh Amendment as an affirmative defense, but not in its initial motion to dismiss; participating in discovery; and subjecting itself to the orders of this Court.   (Doc. No. 28 at 20-21.)   In the alternative, Plaintiff requests that she be given an opportunity to refile her PHRA claims in state court if the Court grants Defendant's motion.   (Id. at 21.)

Defendant's eligibility to assert an Eleventh Amendment defense turns on whether it has waived its immunity from suit.   A state can only waive its immunity from suit with a "'clear declaration' that it intends to submit itself to [federal] jurisdiction."   See In re Flonase Antitrust Litig., 879 F.3d 61, 69 (3d Cir. 2017) (quoting Coll. Sav. Bank v. Fla. Prepaid Postsecondary Educ. Expense Bd., 527 U.S. 666, 670 (1999)); see also Coll. Sav. Bank., 527 U.S. at 680 (discussing the high bar required to demonstrate waiver and explaining that "[t]he whole point of requiring a 'clear declaration' by the State of its waiver is to be certain that the State in fact consents to suit").   Under limited circumstances, declarations of consent have been inferred by a State's affirmative litigation conduct in order "to avoid inconsistency, anomaly, and unfairness[.]"   See Lapides v. Bd. of Regents of Univ. Sys. of Ga., 535 U.S. 613, 620 (2002). These limited circumstances include where a state: voluntarily appears in a lawsuit; removes an action from state to federal court; or unfairly delays bringing a sovereign immunity defense in order to gain a tactical advantage.   See, e.g., Clark v. Barnard, 108 U.S. 436, 447-48 (1883) (explaining that a state's voluntary appearance, such as intervening in an action, constitutes a waiver of its sovereign immunity); Lombardo, 540 F.3d at 197 (explaining that a state waives its

9

immunity "from suit" by removing a state action to federal court); New Hampshire v. Ramsey, 366 F.3d 1, 17 (1st Cir. 2004) (concluding that a state waived its immunity from suit by voluntarily litigating the merits of a case and unfairly delaying its invocation of the Eleventh Amendment until "more than two years into th[e] matter").

Here, Plaintiff initiated suit against Defendant in this Court, meaning Defendant did not voluntarily appear in the suit or remove a state action to a federal forum.  Moreover, Defendant immediately asserted a sovereign immunity defense in its answer to Plaintiff's amended complaint, meaning it did not unfairly delay raising an Eleventh Amendment defense.  Finally, Plaintiff does not cite any authority suggesting that participating in discovery or complying with a court's orders before filing an answer amounts to a waiver of sovereign immunity.[13]  Nor is the Court aware of any such authority.  On the contrary, courts have found no waiver under such circumstances.  See, e.g., R.I. Dep't of Env't Mgmt. v. United States, 304 F.3d 31, 49 (1st Cir. 2002) (explaining a state does not waive its immunity "by doing nothing more than filing an answer to a complaint and conducting discovery"); see also In re Hechinger Inv. Co. of Delaware, Inc., 335 F.3d 243, 251 (3d Cir. 2003) (explaining "[a] sovereign immunity defense differs from a defense on the merits in the key respect that a defendant may raise the defense of sovereign immunity at any time in the absence of an explicit waiver").  Accordingly, Defendant's affirmative litigation conduct in this case does not warrant a "find[ing of] waiver" to "avoid inconsistency, anomaly, and unfairness[.]"  See Lapides, 535 U.S. at 620; see, e.g., Union Pac. R. Co. v. La. Pub. Serv. Comm'n, 662 F.3d 336, 341 (5th Cir. 2011) (supporting its

---

[13]  In fact, as to Defendant's participation in discovery, the Court observes that the very same facts underlying Plaintiff's Title VII claims also underly her PHRA claims.   Accordingly, Defendant's participation in discovery does not indicate that it consented to being sued as to Plaintiff's state law claims.

conclusion that Louisiana did not waive its Eleventh Amendment immunity, despite raising the argument for the first time on appeal, because Louisiana "never chose to litigate this suit in a federal forum"); CPC Int'l, Inc. v. Aerojet-Gen. Corp., 764 F. Supp. 479, 481 (W.D. Mich. 1991) (refusing to find a waiver of Eleventh Amendment immunity because, inter alia, the case was distinguishable "from those instances where states waive immunity through participation in litigation"—notably, the state agency "was involuntarily brought into th[e] . . . case").   The Court therefore concludes that sovereign immunity bars Plaintiff's PHRA claims against Defendant in this forum and will dismiss them.

Having determined that the Eleventh Amendment bars Plaintiff's PHRA claims in this forum, the Court turns to whether Plaintiff's claims should be dismissed without prejudice to her ability to refile them in state court.   This inquiry hinges on whether her claims are time-barred. After a plaintiff files a complaint with the PHRC, they must file suit "within two years after the date of notice from the [PHRC] closing th[at] complaint."   See 43 P.S. § 962(c)(2).   Plaintiff received this notice on June 19, 2019.   (Doc. No. 8-1.)   Defendant argues that Plaintiff should not be allowed to refile her PHRA claims in state court because she failed to initiate "an action concerning her PHRA claims in state court within the two years provided by statute," meaning "any PHRA claims now filed would be time barred."   (Doc. No. 30 at 15.)   The Court disagrees because the "time limits for filing under any complaint or other pleading" under the PHRA are "subject to . . . equitable tolling."   See 43 P.S. § 962(e).   Equitable tolling has been recognized "where a plaintiff has timely asserted [their] rights in the wrong forum."   See Shaver v. Corry Hiebert Corp., 936 F. Supp. 313, 316 (W.D. Pa. 1996) (collecting cases).   Here, Plaintiff filed this action in a federal forum on February 2, 2021—within two years of her June 19, 2019 PHRC notice.   Accordingly, the Court will dismiss Plaintiff's PHRA claims in this forum without

prejudice to her ability to refile them in state court.   The Court will further toll the statutory period between February 2, 2021, when Plaintiff initiated the above-captioned action, and June 19, 2021, which would have been Plaintiff's last day to pursue her PHRA claims in a state forum—meaning Plaintiff shall have one-hundred and thirty-seven (137) days from the date of this Memorandum and its corresponding Order to refile her PHRA claims (Counts II & IV) in state court.

With the above in mind, the Court turns to whether Defendant is entitled to summary judgment as to Plaintiff's Title VII claims of hostile work environment sexual harassment and sexual discrimination (Count I) and retaliation (Count III).

**B.   Plaintiff's Title VII Hostile Work Environment Claim**

Defendant argues that it is entitled to summary judgment as to Plaintiff's Count I hostile work environment sexual harassment claim because she failed to timely file a complaint with the PHRC or EEOC after Pfeffer was transferred from his position as Plaintiff's supervisor. (Doc. No. 27 at 5-6.)   Plaintiff contends that Defendant's motion should be denied because she timely filed her charge of discrimination with the PHRC and EEOC within the applicable limitations period.   (Doc. No. 28 at 11.)

**1.   Applicable Legal Standard**

"To bring suit under Title VII, a claimant in a deferral state, such as Pennsylvania, must first file a complaint with the EEOC within 300 days of the alleged unlawful employment practice."   Mandel v. M & Q Packaging Corp., 706 F.3d 157, 165 (3d Cir. 2013) (citing 42 U.S.C. § 2000e-5(e)(1)).   The applicable limitations period begins to accrue "upon the time of the discriminatory acts"—not when the "consequences of the [alleged discriminatory] acts bec[o]me most painful."   See Delaware State Coll. v. Ricks, 449 U.S. 250, 257-58 (1980) (quoting Abramson v. University of Hawaii, 594 F.2d 202, 209 (1979)).   "[D]iscrete

12

discriminatory actions are not actionable if time barred, even when they are related to acts alleged in timely filed charges." Nat'l R.R. Passenger Corp. v. Morgan, 536 U.S. 101, 113 (2002). Each discrete act of discrimination "constitutes a separate actionable 'unlawful employment practice,'" see id. at 114, and "start[s] a new clock for filing charges alleging that act,'" see Mateo v. First Transit Inc., No. 19-cv-17302, 2021 WL 3856288, at *6 (D.N.J. Aug. 30, 2021) (quoting Morgan, 536 U.S. at 122). Thus, a court "generally . . . may not consider conduct falling outside the designated statute of limitations period." See Leonard v. Bristol Twp. Sch. Dist., No. 09-cv-04692, 2010 WL 2995540, at *4 (E.D. Pa. July 28, 2010). Examples of discrete acts include "termination, failure to promote, denial of transfer, refusal to hire, wrongful suspension, wrongful discipline, denial of training, [and] wrongful accusation." See O'Connor v. City of Newark, 440 F.3d 125, 127 (3d Cir. 2006)).

Under the "continuing violations doctrine," however, "when a defendant's conduct is part of a continuing practice, an action is timely so long as the last act evidencing the continuing practice falls within the limitations period; in such an instance, the court will grant relief for the earlier related acts that would otherwise be time barred." See Tearpock-Martini v. Borough of Shickshinny, 756 F.3d 232, 236 (3d Cir. 2014) (quoting Brenner v. Local 514, United Bhd. of Carpenters & Joiners of Am., 927 F.2d 1283, 1295 (3d Cir. 1991)). "[D]iscriminatory acts that are not individually actionable may be aggregated to make out a hostile work environment claim" if they are "linked in a pattern of actions which continues into the applicable limitations period." See Mandel, 706 F.3d at 165 (emphasis added) (quoting O'Connor, 440 F.3d 125 at 127).

## 2.    Arguments of the Parties

Defendant argues that "in order to pursue any remedy for a sexual harassment claim, a claimant must submit a charge of discrimination with the" EEOC "within one-hundred and

eighty (180) days after the alleged unlawful employment practice took place, or within three-hundred (300) days if the claimant instituted a proceeding with the PHRC."   (Doc. No. 27 at 5.)

Because "Pfeffer transferred out of Plaintiff's Division on September 12, 2016," Defendant asserts that "[a]ny supervision or interaction Plaintiff had with Pfeffer . . . ended upon his transfer to another Division," meaning Plaintiff was obligated to file any charge of discrimination within 180 days of his transfer.   (Id.)   However, as Plaintiff did not file a charge of discrimination until April 2, 2018, Defendant argues that Plaintiff's hostile work environment sexual harassment claim is time-barred under the applicable limitations period.   (Id. at 6-7.)

Plaintiff disagrees, contending that because she filed her "charge with the PHRC" and requested dual-filing with the EEOC, the three-hundred (300) day deadline applies.   (Doc. No. 28 at 12.)

Defendant maintains that Plaintiff's response is immaterial because even under the three-hundred (300) day deadline, her last day to file an administrative complaint about Pfeffer's conduct was July 9, 2017—which she missed by over a year.   (Doc. No. 30 at 5.)

### 3.  Analysis

Plaintiff's hostile work environment sexual harassment claim stems from Pfeffer's conduct as her supervisor.   Because it is undisputed that Pfeffer was transferred from his position as Plaintiff's supervisor in 2016 and that Plaintiff did not file a charge of discrimination until April 2, 2018—more than three-hundred (300) days later—Defendant has met its initial burden of showing that Plaintiff's sexually hostile work environment claim is untimely.   See Celotex, 477 U.S. at 323.   Accordingly, the Court turns to whether Plaintiff, the non-moving party, has offered "specific facts to show that, to the contrary, a genuine issue of material fact exists for trial."   See Fado v. Kimber Mfg., Inc., No. 11-cv-04772, 2016 WL 3912852, at *3 (D.N.J. July 18, 2016); see also Howard v. Pine Forge Acad., Pine Forge, Pa., 678 F. Supp. 1120, 1125 (E.D. Pa. 1987) (explaining that because timeliness is a "an issue upon which [the]

14

plaintiff will bear the burden of proof at trial, she is obliged to come forward with some evidence to counter defendants' challenge to the timeliness of her EEOC complaint"). Specifically, the Court considers whether Plaintiff has established a continuing violation, which is the only way that Plaintiff's challenge to Pfeffer's conduct in 2016—which falls outside the applicable limitations period—could be made timely.

To establish a continuing violation, Plaintiff must (1) show that she filed her charge of discrimination within three-hundred (300) days of the last incident evidencing her hostile work environment sexual harassment claim and (2) offer evidence that Pfeffer's conduct in 2016 is related to that incident. Plaintiff, however, does not identify <u>any</u> aspect of her hostile work environment claim that is timely—nor does she argue that the continuing violations doctrine is applicable. Instead, she conclusorily states that she timely filed her charge of discrimination within the applicable limitations period. Because Plaintiff has failed to provide any grounds from which to conclude that her sexually hostile work environment claim is timely, the Court concludes that Defendant is entitled to summary judgment on this issue. <u>See, e.g.</u>, <u>Howard</u>, 678 F. Supp. at 1125 (explaining that the plaintiff's failure "to come forward with some evidence to counter [the] defendants' challenge to the timeliness of her EEOC complaint . . . requires that judgment on the Title VII claims be granted to [the] defendants"); <u>see also</u> <u>Drummond v. Mazzeo</u>, No. 93-cv-06393, 1995 WL 89045, at *2 (E.D. Pa. Feb. 27, 1995) (explaining that "amorphous and conclusory allegations and arguments" are insufficient to "defeat a motion for summary judgment") (first citing <u>Lujan v. Nat'l Wildlife Fed'n</u>, 497 U.S. 871 (1990); and then citing <u>Childers v. Joseph</u>, 842 F.2d 689 (3d Cir. 1987)).

This conclusion is bolstered by the fact that the only adverse employment decision that appears to have occurred within three-hundred (300) days of the filing of Plaintiff's

administrative complaint is her suspension, which she claims resulted in her constructive termination.   <u>See</u> (Doc. Nos. 8 ¶ 44; 28 at 18).   Constructive termination, however, cannot form the basis of a hostile work environment claim.   <u>See</u> <u>Roberts v. Health Partners Plans, Inc.</u>, No. 17-cv-00297, 2017 WL 3310691, at *5 (E.D. Pa. Aug. 3, 2017) (explaining that "[t]ermination . . . does not <u>create</u> a hostile work environment because it <u>eliminates</u> the existence of a work environment all together") (collecting cases); <u>see, e.g.</u>, <u>Doe v. Mercy Cath.</u> <u>Med. Ctr.</u>, 850 F.3d 545, 566 (3d Cir. 2017) (concluding that a decision to terminate the plaintiff "was a discrete act actionable on its own as retaliation . . . [and] cannot simultaneously support a hostile environment claim").   Nor can "a hostile work environment claim otherwise predicated on practices that occurred outside the limitations period" be made timely by being linked to discrete acts of alleged discrimination.   <u>See</u> <u>McDonald v. SEIU Healthcare</u> <u>Pennsylvania</u>, No. 1:13-cv-02555, 2014 WL 4672493, at *12 (M.D. Pa. Sept. 18, 2014) (collecting cases); <u>see also</u> <u>O'Connor</u>, 440 F.3d at 127 (identifying suspension and termination as discrete acts of discrimination).   For these reasons, the Court concludes that Plaintiff's Count I hostile work environment sexual harassment claim is untimely as a matter of law and will grant Defendant's motion for summary judgment as to this claim.   Having determined that this claim is time-barred, the Court turns to whether Defendant is entitled to summary judgment as to Plaintiff's Title VII discrimination claim.

### C.    Plaintiff's Title VII Discrimination Claim

Defendant argues that it is entitled to summary judgment as to Plaintiff's Count I discrimination claim because it is untimely.   (Doc. Nos. 27 at 8, 30 at 5.)   Plaintiff maintains that Defendant's motion should be denied because she timely filed an administrative complaint within the applicable limitations period.   (Doc. No. 28 at 11.)

### 1.      Applicable Legal Standard

For brevity, the Court incorporates by reference the legal standard for Title VII

timeliness provided, supra, in section III.B.1.a.

### 2.      Arguments of the Parties

The parties' arguments about the timeliness of Plaintiff's Title VII discrimination claim

are similar to those made regarding her Title VII hostile work environment sexual harassment

claim.   Defendant contends that Plaintiff's discrimination claim is untimely because she

"waited over a year and a half following any alleged discriminatory conduct [by Pfeffer] to file

her charge of discrimination with the PHRC and the EEOC."   (Doc. No. 30 at 5-7.)   Moreover,

Defendant asserts that although Plaintiff's "suspension and resignation" occurred within three

hundred (300) days of those filings, "Plaintiff does not advance any argument that her

suspension and resignation serve as a basis of her sexual discrimination claim."   (Id. at 7.)   In

response, Plaintiff reiterates her argument that because she filed "h[er] charge with the PHRC

and request[ed] dual-filing [with the EEOC]," the "300-day timeline" applies, under which her

claim is timely.   (Doc. No. 28 at 11-12.)

### 3.      Analysis

Plaintiff claims that she "was subjected to intentional discrimination as to her sex" due

to Pfeffer's conduct as her supervisor.   (Doc. No. 28 at 16.)   Because Plaintiff did not file a

charge of discrimination within three hundred (300) days of Pfeffer's transfer, Defendant has

met its initial burden of showing that her Title VII discrimination claim is untimely as a matter

of law.   See Ricks, 449 U.S. at 258 (quoting Abramson v. University of Hawaii, 594 F.2d 202,

209 (1979) (explaining that Title VII's limitations period accrues "upon the time of the

discriminatory acts).   Plaintiff's arguments to the contrary, which are conclusory and fail to

identify a single aspect of her discrimination claim that is timely, are insufficient to survive a

motion for summary judgment.   See, e.g., Howard, 678 F. Supp. at 1125 (explaining that the

plaintiff's failure "to come forward with some evidence to counter [the] defendants' challenge

to the timeliness of her EEOC complaint . . . requires that judgment on the Title VII claims be

granted to [the] defendants"); see also Drummond, 1995 WL 89045, at *2 (explaining that

"amorphous and conclusory allegations and arguments" are insufficient to "defeat a motion for

summary judgment").

In reaching this conclusion, the Court recognizes that Plaintiff was suspended within the

applicable limitations period.   However, Plaintiff's complaint does not plausibly allege that her

suspension is independently discriminatory for the purposes of Count I.[14]   Nor does her brief in

opposition identify her suspension, or any other incident within the applicable limitations

period, as a basis for her Title VII discrimination claim.[15]   For these reasons, the Court

concludes that Plaintiff's Count I sex discrimination claim is untimely as a matter of law and

will grant Defendant's motion as to this claim.

### D.     Plaintiff's Title VII Retaliation Claim

Defendant argues that it is entitled to summary judgment as to Plaintiff's Title VII

retaliation claim because she has failed to establish a prima facie case of retaliation.   (Doc. No.

27 at 11.)   Plaintiff disagrees, arguing that Defendant's motion must be denied because she has

---

[14]   Although Plaintiff alleges that "similarly-situated male employees and employees who had
not engaged in protected activity," namely Jesse Drayer, "were not similarly disciplined for the
same or similar alleged privacy violations" (Doc. No. 8 ¶¶ 46-48), Plaintiff later testified "it
wasn't Jesse Drayer that violated" the policy (Doc. No. 26-1 at 88-89)—rendering this allegation
implausible.

[15]   Plaintiff identifies her suspension in connection with her Title VII retaliation claim and
argues she was constructively discharged for complaining about Pfeffer's misconduct.
However, for the reasons discussed, infra, Plaintiff's Title VII retaliation claim fails as a matter
of law.

established a prima facie case of retaliation and because there are genuine issues of material fact

that require resolution at trial.   (Doc. No. 28 at 12.)

### 1.      Applicable Legal Standard

"To state a prima facie case of retaliation, a plaintiff must show that (1) she engaged in a

protected activity, (2) she suffered an adverse employment action, and (3) there was a causal

connection between the participation in the protected activity and the adverse action."

Carvalho-Grevious v. Del. State Univ., 851 F.3d 249, 257 (3d Cir. 2017) (citing Moore v. City of

Philadelphia, 461 F.3d 331, 340-41 (3d Cir. 2006)).   "After establishing a prima facie case of

retaliation, the burden shifts to the employer to provide a legitimate non-retaliatory reason for its

conduct," and if the employer succeeds, "the burden shifts back to the plaintiff" to show that the

employer's non-retaliatory reason is pretextual.   See id.

"[A]t the prima facie stage, a plaintiff need only proffer evidence sufficient to raise the

inference that her engagement in a protected activity was the likely reason for the adverse

employment action."   Id. at 259 (quoting Kachmar v. SunGard Data Systems, Inc., 109 F.3d

173, 177 (3d Cir. 1997)).   Courts can consider "'a broad array of evidence'" when making this

determination, see id. at 260, and a close temporal proximity between a protected activity and an

adverse action is "unusually suggestive" of causation, see LeBoon v. Lancaster Jewish Cmty.

Ctr. Ass'n, 503 F.3d 217, 232 (3d Cir. 2007) (quoting Farrell v. Planters Lifesavers Co., 206

F.3d 271, 284 (3d Cir. 2000)).   In the absence of close temporal proximity, courts in the Third

Circuit "apply the 'timing plus other evidence' test to determine whether" there is a retaliatory

motive.   See Blakney v. City of Philadelphia, 559 F. App'x 183, 186 (3d Cir. 2014)

(unpublished).   Relevant evidence includes "intervening antagonism or retaliatory animus,

inconsistencies in the employer's articulated reasons for terminating the employee, or any other

evidence in the record sufficient to support the inference of retaliatory animus."   See LeBoon,
503 F.3d 217.   Under the "'timing plus other evidence" test, an extended period of time between
a protected activity and an adverse employment action, without alternative evidence from which
to infer retaliatory animus, can be "conclusive" proof that a plaintiff failed to establish causation
as a matter of law.   See, e.g., Krouse v. Am. Sterilizer Co., 126 F.3d 494, 504 (3d Cir. 1997)
(explaining that "absent evidence of intervening antagonism or retaliatory animus, we conclude
that the passage of time in this case," nineteen (19) months, "is conclusive" to show that the
plaintiff "failed to establish a causal link as a matter of law").

### 2.    Arguments of the Parties

Defendant argues that it is entitled to summary judgment because Plaintiff cannot
establish a causal connection between her protected activity of complaining about Pfeffer and its
adverse action of suspending her employment.   (Doc. No. 27 at 5-14.)   Specifically, Defendant
argues that "the absence of any temporal proximity [between when Plaintiff engaged in a
protected activity by complaining about Pfeffer and the date of her suspension], the absence of
any allegations or facts to illustrate an interference of antagonism, and [the fact] that [it] had a
bona fide reason to discipline Plaintiff for violating its [confidentiality agreement]," precludes an
inference of causation.   (Doc. No. 27 at 14.)   In response, Plaintiff argues that she can establish
causation because "[h]ad she not made the complaint of harassment to the union, there would
have been no reason to terminate her as the email would not have existed."   (Doc. No. 28 at 18.)
Additionally, she claims that "there is no evidence of misconduct or malintent of Plaintiff"
because "she only forwarded the [confidential] information based on direction from her union
representative," and that it may "reasonably be inferred . . . that Defendant took this opportunity

to terminate [her] because of information contained in her allegations made through appropriate channels."[16]   (Id. at 19.)

### 3.    Analysis

The Court observes that over seventeen (17) months passed between when Plaintiff sent the email about Pfeffer's conduct to Ms. Feathers[17] and Defendant's decision to suspend her. This large temporal gap triggers the timing plus other evidence test.   See Blakney, 559 F. App'x at 186 (unpublished).   The other evidence adduced by Plaintiff is Pfeffer's purported initiative in reporting her emails even though they pertained to his alleged misconduct.   (Doc. No. 28 at 17.)

Pfeffer's personal initiative in reporting Plaintiff does not provide grounds from which a reasonable fact-finder could infer causation.   To establish a prima facie case of retaliation, Plaintiff's burden is to show that the likely reason for her employer's adverse employment decision was her engagement in a protected activity.   Pfeffer, however, is not Plaintiff's employer—he is an employee who reported her conduct.   The adverse decision to suspend Plaintiff was made by The Department at the recommendation of Ms. Sullivan (Doc. No. 29-3 at 63-64), meaning Plaintiff must show that Ms. Sullivan and others involved in the investigation of her confidentiality violation and decision to suspend her had a retaliatory motive.   The closest Plaintiff comes to addressing Ms. Sullivan's conduct is in her counter-statement of material facts, where she asserts that "the credibility of the agents as to the reason why [she] was suspended requires a credibility determination, which should be left to the factfinder."   (Doc.

---

[16]   Although this argument is made in connection with Plaintiff's contention that Defendant's proffered non-discriminatory reason for her suspension is pretextual, the Court considers it because a showing of but-for causation at the pretext stage is "necessarily" sufficient to show likely causation at the prima facie stage.   See Carvalho-Grevious, 851 F.3d at 259 (quoting Foster v. Univ. of Maryland-E. Shore, 787 F.3d 243, 251 (4th Cir. 2015)).

[17]   As discussed, supra, Plaintiff also forwarded this email to Local Union No. 2545.

No. 29 ¶ 21.)   This sweeping declaration, which is not elaborated elsewhere in Plaintiff's brief, does not create an issue for trial.   Moreover, Plaintiff's assertion is belied by her argument that, when she met with Ms. Sullivan during a pre-disciplinary conference, Ms. Sullivan "was less concerned with the reason Plaintiff made the communication [regarding Pfeffer] than she was with the taxpayer information[.]"   (Doc. No. 28 at 19.)   Indeed, Ms. Sullivan's concern with Plaintiff's disclosure of taxpayer information—and not Pfeffer's conduct—is consistent with Defendant's contention that Plaintiff was solely disciplined for violating confidentiality rules.

The Court also observes that Plaintiff complained about Pfeffer's conduct on <u>two</u> instances: once to Pfeffer's superior while he was still her supervisor, and once to her union representative by email, which she forwarded to Local Union No. 2545.   (Doc. Nos. 28 at 16; 29 ¶¶ 14-15.)   Only the latter involved the disclosure of confidential taxpayer information; only the latter resulted in Defendant taking an adverse employment action against her.   Moreover, Plaintiff admitted to having disclosed confidential taxpayer information (Doc. No. 26 ¶ 20)— which Defendant maintains would have resulted in a suspension "regardless of who reported the policy violation" (Doc. No. 30 at 12.)   For these reasons, Plaintiff has failed to meet her burden of producing evidence from which a reasonable factfinder could conclude that the <u>likely</u> reason for her suspension was her engagement in a protected activity—rendering baseless her contention that "Defendant took this opportunity to terminate [her] because of information contained in her allegations of sexual harassment."   (Doc. No. 28 at 19.)   This lack of evidence, combined with the large temporal gap between when Plaintiff complained about Pfeffer and Defendant's adverse employment action, entitles Defendant to judgment as a matter of law. See, e.g., <u>Genevie v. Jackson</u>, No. 05-cv-01733, 2008 WL 793885, at *15-16 (W.D. Pa. Mar. 24, 2008) (concluding that the defendants were entitled to summary judgment because of a two (2)

year temporal gap and the fact that the plaintiff "produced no evidence of intervening antagonism or retaliatory animus, or any other evidence that establishes a causal connection between the protected activity and the adverse acts").   The Court will therefore grant Defendant's motion for summary judgment as to Plaintiff's Count III Title VII retaliation claim.

## IV.   CONCLUSION

For the foregoing reasons, the Court will grant Defendant's motion for summary judgment (Doc. No. 25) in its entirety.   An appropriate Order follows.